UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

CMA OF DELAWARE, INC. and
NATIONAL BEVERAGE CORP.,

       Plaintiffs,

v.

DAVID B. MURSTEN; JOHN AND JANE
DOES; and JOHN DOE CORPORATIONS,

       Defendants.

_____ /

## COMPLAINT

Plaintiffs, CMA OF DELAWARE, INC. and NATIONAL BEVERAGE CORP., sue Defendants, DAVID B. MURSTEN, JOHN AND JANE DOES, and JOHN DOE CORPORATIONS, for damages and injunctive relief, and allege:

**Parties**

1.      Plaintiff, CMA OF DELAWARE, INC. a/k/a Corporate Management Advisors, Inc. ("CMA"), is a Delaware corporation with its principal place of business in Broward County, Florida.

2.      Plaintiff, NATIONAL BEVERAGE CORP. ("NBC"), is a Delaware corporation with its principal place of business in Broward County, Florida.

3.      Defendant, DAVID B. MURSTEN ("MURSTEN"), is a citizen of the State of Georgia and a member of the Florida Bar, Bar No. 267147.

4.      Defendants, JOHN AND JANE DOES, are named as additional individuals whose identities are heretofore unknown, but who may have been complicit with MURSTEN in conspiring with him in committing the illegal and malicious acts set forth herein.

1

5.     Defendants, JOHN DOE CORPORATIONS, are named as additional corporate or legal entities whose identities are heretofore unknown, but who may have been complicit with MURSTEN in conspiring with him in committing the illegal and malicious acts set forth herein.

6.     Plaintiffs anticipate naming additional individuals and entities as defendants who participated in the events leading to the filing of this action.

## Jurisdiction and Venue

7.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and (2) the parties to this action are citizens of different states.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of Defendants' acts and omissions giving rise to the claims contained herein occurred in this district.

## The Egregious Conduct Giving Rise to this Action

9.     This Action is brought to obtain judicial remedies on their behalf and on behalf of NBC's public shareholders for the willful infliction of damages on NBC and those shareholders in violation of a protective order entered by this Court as well as of confidentiality agreements.  As set forth in greater detail below, MURSTEN attempted to extract payment from the Plaintiffs and/or their principal fiduciary by threatening to bring, then bringing, spurious actions with unfounded, unsupportable and scandalous allegations.  These actions were found to be without merit; and MURSTEN declared bankruptcy to avoid paying a judgment entered against him relating to his activities in this regard.  MURSTEN then determined to exact revenge by entering into an unholy alliance with the John Doe and Jane Doe defendants to publish fragmentary information and defamatory allegations in violation of the court order and

confidentiality agreements. The John Doe, Jane Doe and John Doe Corporations knew that they were inducing a violation of a court order and confidentiality agreements, but did so to profit by selling short NBC's stock and profiting from a decline in the market price for such shares.

10.     So intent were the defendants to carry out their scheme to inflict injury, to cloak their falsehoods with the appearance of authority and to disguise the fact that they were violating confidentiality agreements, that they falsified documents to make them appear that they were part of the Court records when they were not.  In addition to the losses suffered by NBC and its related parties, it is beyond peradventure that numerous, innocent public shareholders suffered multi-millions of dollars in damages; and some were induced to sell their shares as a result of this fraudulent scheme of the Defendants in violation of both §10(b) of the Securities Exchange Act of 1934 and common law.

11.     MURSTEN was, at all relevant times, an employee of, or consultant to, NBC and CMA working in various capacities, including providing assistance in legal matters for NBC and CMA.

12.     As an employee of and consultant to NBC and CMA, MURSTEN was required to, and did, enter into Confidentiality Agreements with NBC and CMA to protect their confidential information.

13.     On June 13, 2005, MURSTEN acknowledged that he was aware of company policies regarding confidentiality obligations and acknowledged that he had previously executed a Confidentiality Agreement agreeing not to disclose or make use of confidential information, knowledge or data about NBC. *See Exhibit 1 attached hereto ("It is imperative that great care and attention be afforded the Company's confidential information and that all employees refrain from any such disclosure.").*

14.    On August 21, 2006, MURSTEN executed a Confidentiality Agreement ("2006 Confidentiality Agreement") "in consideration of and as a condition of [his] employment or continued employment with" CMA. *See Exhibit 2 attached hereto.*

15.    The 2006 Confidentiality Agreement required MURSTEN to:

> keep confidential and not to disclose or make use of at any time either during or subsequent to [his] employment, any trade secrets, confidential information, knowledge, data or other information of CMA or those companies or persons it provides management services to, including National Beverage Corp. and its subsidiaries (collectively, the Company), relating to products, processes, know-how, designs, formulas, test-data, customer lists, business plans, marketing plans and strategies, pricing strategies, or other subject matter pertaining to any business of the Company or any of its clients, customers, consultants, or affiliates which [he] may produce, obtain or otherwise acquire during the course of [his] employment.

16.    The 2006 Confidentiality Agreement, by its terms, had no expiration date and continues indefinitely.

17.    In exchange for agreeing to the broad protections in the 2006 Confidentiality Agreement, MURSTEN was given access to and in fact received significant amounts of confidential and privileged information belonging to NBC and CMA.

18.    Through September 2010 and October 2011, MURSTEN performed services for CMA and NBC and was compensated for those services. At MURSTEN's request and direction, payments for those services were made to companies with which MURSTEN was affiliated.

19.    On January 24, 2011, MURSTEN executed a Confidentiality and Non-Disclosure Agreement ("2011 Confidentiality and Non-Disclosure Agreement") "as an employee or consultant of National Beverage Corp. or its subsidiaries or affiliates (the Company)" in connection with "a possible business transaction (the "Transaction")" involving NBC. *See Exhibit 3 attached hereto.*

20.     The 2011 Confidentiality and Non-Disclosure Agreement included the following language to which MURSTEN agreed:

> At all times during and subsequent to my employment and service to the Company, I agree to keep in strictest confidence the information that is disclosed to me related to the Transaction or to which I have access or have indirectly gained knowledge ("Confidential Information"). I recognize that the existence of such Confidential Information is deemed to be material non-public information, and I will accordingly take all reasonable actions to prevent the unauthorized use or disclosure of the Confidential Information to any other employee or consultant or to any third party. I will not use or disclose the Confidential Information without the written consent of the Company, except as necessary in the ordinary course of my duties as an employee or consultant of the Company as it relates to my direct involvement in the Transaction.

21.     The 2011 Confidentiality and Non-Disclosure Agreement also included the following language to which MURSTEN agreed:

> Upon termination of my employment by or service to the Company or upon the Company's request, I will promptly surrender to the Company all Confidential Information (including all copies, in whatever form) in my possession, custody or control, and I will not keep or take with me any of the written or documented Confidential Information.

22.     The transaction which was the basis for the 2011 Confidentiality and Non-Disclosure Agreement was never consummated and all substantive negotiations ended in or about June 2011.

23.     The 2011 Confidentiality and Non-Disclosure Agreement has not expired.

24.     In exchange for agreeing to the broad protections in the 2011 Confidentiality and Non-Disclosure Agreement, MURSTEN was given access to and in fact received significant amounts of confidential and privileged information belong to NBC and CMA.

## The *Mursten I* Litigation

25.     Sometime before December 12, 2012, MURSTEN met with, and retained, the law firm of Colson Hicks Eidson for the purpose of pursuing a lawsuit against Nick A. Caporella, the Chairman and Chief Executive Officer of NBC and 100% owner of CMA.

26.     In clear violation of the trust placed in him, in clear violation of his professional attorney-client privileged obligations to his clients, and in utter disregard for his contractual obligations, MURSTEN disclosed to Colson Hicks Eidson confidential information encompassed by the Confidentiality Agreements executed by him - - and without the knowledge, acquiescence, or consent of NBC or CMA, all in an attempt to extort money for himself through a baseless lawsuit premised on false allegations.

27.     On December 12, 2012, MURSTEN filed a lawsuit in the United States District Court for the Southern District of Florida, *David B. Mursten v. Nick A. Caporella,* Case No. 12-CV-62474-COHN, *("Mursten I")* which falsely alleged that Nick A. Caporella breached an oral agreement of employment with MURSTEN. That lawsuit, a ginned up and veiled attempt at extortion, was improperly developed using NBC's and/or CMA's confidential and privileged information improperly disclosed and retained by MURSTEN.

28.     During the course of *Mursten I,* MURSTEN continued to improperly disclose confidential information encompassed by the 2006 Confidentiality Agreement and the 2011 Confidentiality and Non-Disclosure Agreement, including, but not limited to, the disclosure of thousands of pages of privileged and/or confidential documents belonging to NBC and CMA.

29.     In addition, in the course of *Mursten I,* MURSTEN improperly disclosed attorney-client privileged information that he received while working in his capacity as legal counsel to NBC and CMA.

30.     *Mursten I* was voluntarily dismissed by MURSTEN on April 12, 2013.

**The *Mursten II* Litigation**

31.     Sometime before January 3, 2014, MURSTEN met with and retained the law firm of Coffey Burlington, P.L. for the purpose of re-filing his lawsuit against Nick A. Caporella.

32.     Even though his previous attempt to extort money had been unsuccessful, MURSTEN again further violating the trust placed in him, again in clear violation of his professional attorney-client obligations to his clients, and again in utter disregard for his contractual obligations, MURSTEN disclosed to Coffey Burlington confidential information encompassed by the Confidentiality Agreements he executed without the knowledge, acquiescence or consent of NBC or CMA. Further, MURSTEN disclosed to Coffey Burlington not only confidential information but also attorney/client privileged information to Coffey Burlington - - all while Coffey Burlington was counsel for a party suing NBC in the Miami Dade County Circuit Court. In connection with that court proceeding, MURSTEN, who had prior to his engagement of Coffey Burlington been actively involved in that court proceeding on behalf of NBC by, *inter alia,* providing in-house legal services in 2010 and 2011, thereafter wrongfully disclosed such confidential and privileged information to Coffey Burlington in total disregard of (i) the Confidentiality Agreements, (ii) the attorney/client privilege owned by NBC and (iii) the ethical prohibition of such unauthorized disclosures under the Rules Regulating The Florida Bar.

33.     On January 3, 2014, MURSTEN filed a lawsuit in the United States District Court for the Southern District of Florida, *David B. Mursten v. Nick A. Caporella,* Case No. 14-CV-60014-COHN, *("Mursten II")* which again falsely alleged that Mr. Caporella had breached a

non-existent and otherwise unenforceable oral agreement. *Mursten II,* MURSTEN's second attempt at extortion, was also improperly developed using NBC's and /or CMA's confidential and privileged information and ginned up allegations.

34.     Prior to the exchange of discovery, the parties agreed to – and the Magistrate Judge endorsed – a Stipulated Protective Order. *Mursten II, D.E. 46.* In the Order, MURSTEN acknowledged that the discovery materials in that case would include confidential, proprietary and privileged information requiring protection through court enforcement. The Order specified the procedures and manner in which confidential information was to be used and solely in connection with the *Mursten II* litigation. Among other things, the Order required that, at the conclusion of the litigation, all confidential information in the possession of the parties, including MURSTEN, was to be returned or destroyed.

35.     During the course of *Mursten II,* MURSTEN improperly disclosed and continues to improperly disclose confidential information encompassed by the Confidentiality Agreements including, but not limited to, the disclosure of thousands of pages of privileged and/or confidential documents belonging to NBC and CMA. This information and documentation includes (i) private, attorney/client privileged communications between Nick Caporella, NBC's Chairman and CEO, and NBC's outside counsel, (ii) other attorney/client privileged information and documentation such as legal documents, Affidavits and drafts thereof, (iii) documents and information related to the Miami Dade County Circuit Court proceedings referenced above, (iv) documents personal to other employees of NBC and/or CMA such as statutorily protected bank records and statements, and (v) documents personal to shareholders of NBC and/or CMA such as records of certain trust distributions.

36.     In addition, in the course of *Mursten II,* MURSTEN improperly disclosed and continues to improperly disclose attorney-client privileged information that was received while working in his capacity as legal counsel to NBC and CMA.

37.     MURSTEN threatened the public disclosure of confidential information in an attempt to extort money from NBC and CMA, and NBC and CMA management. On July 16, 2014, MURSTEN, through his counsel, threatened that MURSTEN could freely publish an article in the Wall Street Journal on the details of the confidential information MURSTEN is bound to keep confidential and not disclose under the terms of the 2006 Confidentiality Agreement and the 2011 Confidentiality and Non-Disclosure Agreement. Such threats to injure NBC and CMA through the disclosure of confidential information in blatant disregard of MURSTEN's contractual and professional obligations are but another example of the injury already caused, being caused and about to be caused to NBC (a publicly traded company) and CMA by MURSTEN's improper actions.

38.     Following extensive discovery in which MURSTEN's allegations were tested, this Court dismissed the *Mursten II* action on the merits through entry of summary judgment in favor of Mr. Caporella.   The basis for this Court's summary dismissal of MURSTEN's complaint was its finding that MURSTEN's alleged oral agreement violated Florida Rule of Professional Conduct 4-1.8.

39.     Undeterred, MURSTEN continues to disregard his contractual and ethical responsibilities as an attorney by publishing slanderous and false statements with the intent of causing severe damage and humiliation to his own former clients.

40.     This Court's dismissal of *Mursten II* was affirmed on appeal by the United States Court of Appeals, Eleventh Circuit, on July 21, 2015.  Thereafter, MURSTEN was ordered to

pay Mr. Caporella approximately $350,000 as reflected in an Amended Final Judgment, dated September 14, 2015.

41.     To avoid the judgment that had been entered against him, MURSTEN filed for personal bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia on or about October 9, 2015.

### The *Mursten III* Litigation

42.     NBC and CMA previously filed a related action against MURSTEN stemming from his breach and violation of three confidentiality and/or non-disclosure agreements he admittedly executed as well as breach of fiduciary duties owed to the Plaintiffs.  *National Beverage Corp. et al. v. Mursten*, United States District Court for the Southern District of Florida, Case No. 14-62066-CIV-COHN ("*Mursten III*").[1]

43.     In *Mursten III*, the Court issued its Findings of Fact and Conclusions of Law (the "Findings").  *Mursten III, D.E. 73.*  Those Findings were issued on June 16, 2015, after the Court conducted a full trial on Plaintiffs' claims for injunctive relief, including under the 2011 NDA.

44.     In its Findings, the Court was clear in concluding that MURSTEN did in fact breach (and certainly threatened to breach) the 2011 NDA.  After highlighting the applicable provisions and obligations under the 2011 NDA, the Court found:

- • "Mursten has retained confidential e-mails and electronic attachments relating to the potential transaction [covered by the 2011 NDA].  These materials include information regarding the identities of individuals and companies involved in the transaction, as well as the terms of the potential transaction."  *Findings, §I. E.20.*

---

[1]     Though the Court had found in *Mursten III* that MURSTEN was entitled to provide certain information to his former attorneys in order to prosecute his now dismissed lawsuit (a finding the Plaintiffs here do not contest and which does not independently form the basis of these claims), no such argument can be advanced here.  There is absolutely no good faith basis to justify MURSTEN's disclosure of confidential and false information other than to inflict financially damage.

- "Nick and Joseph Caporella [principals of the Plaintiffs] worry that Mursten has ulterior motives for retaining private and confidential information relating both to the Caporellas and to the transaction. The Caporellas fear that Mursten will use such information to harm them or Plaintiffs." *Findings, §I. E.21.*

- "Plaintiffs and the Caporellas harbor legitimate concerns regarding a third party's possession of their non-public information." *Findings, §I. E.22.*

- "Plaintiffs have shown that Mursten has kept confidential materials in violation of the 2011 NDA." *Findings, §II, p. 7, emphasis added.*

- "In short, Plaintiffs have shown that Mursten has retained confidential materials relating to the Japanese transaction in violation of the 2011 NDA." *Findings, §II, p. 8, emphasis added.*

45.     The Court further found:

> Plaintiffs and the Caporellas harbor legitimate concerns regarding a third party's possession of their non-public information. The public disclosure of confidential information relating to a potential transaction involving a publicly traded company, such as NBC, may cause significant changes to the company's stock price.

*Findings, ¶22.*

46.     However, the Court noted that, given that the confidential potential transaction took place in 2010 and 2011, MURSTEN's revelation of this "relatively stale information would have a questionable impact, on Plaintiffs or otherwise." *Findings, ¶23.* This included the potential adverse impact on NBC's stock price. *Findings, ¶24.* Thus, the Court determined that any potential harm to the Plaintiffs was too speculative in order for Plaintiffs to prove irreparable harm. *Findings, ¶25-26.*

47.     Unfortunately, the irreparable harm the Court previously found did not then exist has now been inflicted.

48.     MURSTEN's plan to extort money from Mr. Caporella based on threats and false accusations did not go as he had planned, with MURSTEN ending up on the losing end of

baseless litigation.  Having been exposed, defeated, and broke, MURSTEN was desperate.  But he still had documents he wrongfully possessed and he intended to use them to exact revenge. MURSTEN hatched a plan to cause harm by disclosing false and confidential information to the Glaucus Research Group California, LLC ("GLAUCUS").

### Mursten Discloses Confidential Documents and Provides
### <u>False Information to Glaucus to Harm NBC and CMA</u>

49.     On or about September 28, 2016, GLAUCUS published and disseminated a self-serving so-called research "Report" in which it purposely and maliciously sought to financially damage NBC.  GLAUCUS did so in order for it, as a short-seller of securities (in this case NBC's stock, NASDAQ: FIZZ), and with the assistance of MURSTEN, to financially profit from the willful misrepresentations and with misleading excerpts of confidential documents misappropriated from NBC supplied by MURSTEN in order to damage the reputation of NBC to create a basis for the stock price to decline.

50.     Notwithstanding the damage it represents, already put in the public domain, it is necessary to attach the Report here for the Court's review and appreciation of the magnitude of the harm.  *See Exhibit 4.*

51.     Short selling involves the borrowing of a stock (i.e., FIZZ), and then the subsequent selling of the stock, and then, finally, the actual buying the stock back in order to return it to the original lender.  Short sellers, such as GLAUCUS, attempt to make money by betting that the stock they sell will in the future drop in price. If the stock drops, the short seller buys it back at a lower price and returns it to the lender.  Where, as here with FIZZ, the stock is stable or rising due to its strong financial performance and excellent, long-standing executive leadership, a manipulative and unscrupulous short seller may - - in in this case did - - undertake to manipulate and unfairly shape the public's confidence in the stock on a short-term basis by

cobbling together disconnected, untrue information about the company or its executives to drive the price down and to profiteer at the expense of the public shareholders, in general, and the company, in particular.

52.     The "Report" spins a false and fanciful tale based on complaints relating to an action thrown out of court on summary judgment and upheld on appeal. As is detailed below, MURSTEN presented an unfiled complaint containing falsehoods for which absolutely no substantiation existed and that was intended to extract a settlement to avoid negative publicity. When that effort failed, a complaint was filed, discovery was taken under a confidentiality order, and summary judgement was rendered against MURSTEN because he could not even raise a triable issue of fact or a legal theory that would entitle him to any recovery.

53.     It is on this issue of falsification that GLAUCUS issued a "Report" filled with innuendos designed to cast doubt on the Company in support of short sellers, having made no effort to contact the Company to learn of the accuracy of the "information" that it was republishing.

54.     The GLAUCUS Report contains far more than even the most thorough review of documents and information contained in a court file.

55.     By way of example, the GLAUCUS Report features an unredacted version of a Complaint that was never publicly filed in any legal proceeding.  In *Mursten I*, MURSTEN filed a redacted copy of a complaint devoid of any of the allegations featured in the Report. In *Mursten II*, though MURSTEN filed an unredacted complaint, it contained none of the scandalous allegations featured in the Report.   Thus, the most likely way in which GLAUCUS could have obtained a copy of the unredacted and never filed complaint is from MURSTEN himself, or from those acting through him or on his behalf.

56.     In addition, MURSTEN and/or those conspiring with him have fabricated a court record to make it appear as though MURSTEN's unredacted Complaint in *Mursten I* was actually filed in the federal district court.  MURSTEN and/or his co-conspirators have created a document claimed to be MURSTEN's unredacted Complaint and caused it to be posted on the internet for public view.  MURSTEN and /or his co-conspirators fabricated a document to falsely give the appearance that it was actually filed in the federal district court by showing a blue docket header at the top, signifying a court-filed document.  However, MURSTEN's unredacted Complaint was never filed in the court record.  Thus, MURSTEN's conduct, and that of his co-conspirators, is also a fraud upon the Court.

57.     Given his two unsuccessful attempts to extort money from Mr. Caporella and the approximate $350,000 judgment entered against him as a result of his failed lawsuit, MURSTEN has every motivation to injure NBC.  With literally nothing left to lose, MURSTEN has done so by disclosing to GLAUCUS, not only knowingly false information, but also information he obtained in his capacity as an attorney to NBC and/or CMA.

58.     The timing of the release of the GLAUCUS Report was purposely designed by MURSTEN and his co-conspirators to occur immediately prior to NBC's shareholder meeting in order to, again, inflict maximum harm, embarrassment, or confusion.  This behavior, too, is an earmark of MURSTEN and consistent with all of his meritless filings in this Court, which were always specifically designed to be filed immediately prior to other milestones of NBC or its principals, such as NBC's Chairman, Nick A. Caporella.

59.     As a result of Defendants' wrongful dissemination and publication of knowingly false and scandalous allegations, they caused NBC's stock (NASDAQ: FIZZ) to

tumble intra-day (September 28, 2016) by as much as 15% from the prior day's close, equating to more than $175 million in lost market value (i.e., market cap) by the end of the trading day.

60.     In addition, and as part of the relief sought below, Plaintiffs seek immediate and permanent relief from this Court.  MURSTEN's most recent actions direct that a severe and permanent relief be mandated granting protection to the shareholders and management of NBC.  MURSTEN may have conspired to manipulate the "short interest" of NBC's common stock over a much longer period of time utilizing confidential information in violation of confidentiality agreements, non-disclosure agreements and in violation of a court order to protect that information.  This Court has witnessed spurious and malicious behavior requiring immediate action to preserve the fiduciary responsibility that NBC upholds to its shareholders. *Mursten I*, *Mursten II* (including appellate affirmation), *Mursten III*, and their outcomes have not deterred MURSTEN's malevolent and egregious behavior.  Immediate and permanent relief is needed from this Court to stop MURSTEN from further harming innocent people by finding him to be in contempt, and the Court's full authority attendant to a contempt finding, in lieu of any monetary penalty that MURSTEN may against seek to avoid through another bankruptcy.  MURSTEN may profit in participation with others using false and fraudulent methods in either criminal or civil violation of both Section 10(b) of the Securities Exchange Act of 1934 and Common Law.  Thousands of people have suffered at his hand in spite of penalties and protective orders previously handed down by this Court.

61.     All conditions precedent to the commencement of this action have been performed, waived or excused.

62.     In particular, NBC and CMA, through their counsel, made repeated demand upon MURSTEN, through his former counsel, for the immediate and unconditional return of

15

all of its documents, records, and materials pursuant to the Stipulated Protective Order, the confidentiality agreements, and MURSTEN's ethical obligations.  *See, i.e. Exhibit 5.* MURSTEN failed to fully and adequately respond to those demand and failed to comply with his legal obligations.

## COUNT I
## CLAIM FOR MONEY DAMAGES BY NBC FOR BREACH OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

NBC realleges and reavers paragraphs 1-62, and would further allege:

63.    On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates.

64.    MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information and documents belonging to NBC.

65.    NBC has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

66.    MURSTEN continues to breach the 2011 Agreement by continuing to disclose to third parties confidential information and documents belonging to NBC.

67.    The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce the Agreement.

WHEREFORE, NBC seeks money damages resulting from violation of the 2011 Confidentiality and Non-Disclosure Agreement, together with attorney's fees, interest and costs.

## COUNT II
## CLAIM FOR MONEY DAMAGES BY CMA FOR BREACH OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

CMA realleges and reavers paragraphs 1-62 and would further allege:

68.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates, including CMA.

69.     CMA is a beneficiary of the 2011 Confidentiality and Non-Disclosure Agreement and was included with the entities covered by the 2011 Confidentiality and Non-Disclosure Agreement.

70.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information and documents belonging to CMA.

71.     CMA has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

72.     MURSTEN continues to this day breaching the 2011 Confidentiality and Non-Disclosure Agreement by disclosing to third parties confidential information, knowledge and documents which are the property of CMA.

73.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce the Agreement.

WHEREFORE, CMA seeks money damages resulting from MURSTEN's violation of the 2011 Confidentiality and Non-Disclosure Agreement, together with attorney's fees, interest and costs.

## COUNT III
## CLAIM FOR MONEY DAMAGES BY NBC FOR
## BREACH OF FIDUCIARY DUTY BY MURSTEN

NBC realleges and reavers paragraphs 1-62 and further alleges:

74.     During his employment by NBC, MURSTEN entered into an attorney-client relationship with NBC during the course of which he provided periodic legal services to NBC.

75.     During the course of his relationship with NBC, MURSTEN engaged in confidential communications with and otherwise gained confidential information from NBC and its officers, directors, employees and representatives in order to render legal services.

76.     During these communications, confidential business and proprietary information was disclosed to MURSTEN to enable him to render legal advice to NBC.

77.     As a result of the attorney-client relationship between MURSTEN and NBC, MURSTEN owed a fiduciary duty and has a continuing duty to NBC to maintain in confidence and not to disclose the attorney-client communications and other confidential information to third parties.

78.     MURSTEN has intentionally breached his fiduciary duty arising from the attorney-client relationship with NBC by disclosing attorney-client communications and other confidential information to third parties without NBC's permission and without waiver of the attorney-client privilege.

79.     Even more egregious, MURSTEN has maliciously caused the publication of false and scandalous allegations specifically intended to cause harm to his former client, NBC.

80.     As a direct and proximate result of MURSTEN's breach of his fiduciary duties, NBC has suffered damages.

WHEREFORE, NBC seeks money damages resulting from MURSTEN's breach of fiduciary duties, together with interest and costs.

### COUNT IV
### CLAIM FOR MONEY DAMAGES BY CMA FOR
### BREACH OF FIDUCIARY DUTY BY MURSTEN

CMA realleges and reavers paragraphs 1-62 and further alleges:

81.     During his employment by CMA, MURSTEN entered into an attorney-client relationship with CMA during the course of which he provided periodic legal services to CMA.

82.     During the course of his relationship with CMA, MURSTEN engaged in confidential communications and otherwise gained confidential information from CMA and its officers, directors, employees and representatives in order to render legal services.

83.     During these communications, confidential business and proprietary information was disclosed to MURSTEN to enable him to render legal advice to CMA.

84.     As a result of the attorney-client relationship between MURSTEN and CMA, MURSTEN owed a fiduciary duty and has a continuing duty to CMA to maintain in confidence and not to disclose the attorney-client communications and other confidential information to third parties.

85.     MURSTEN has intentionally and maliciously breached his fiduciary duty arising from the attorney-client relationship with CMA by disclosing attorney-client communications and other confidential information to third parties without CMA's permission and without waiver of the attorney-client privilege.

86.     Even more egregious, MURSTEN has maliciously caused the publication of false and scandalous allegations specifically intended to cause harm to his former client, NBC.

87.     As a direct and proximate result of MURSTEN's breach of his fiduciary duty by violating the attorney-client privilege, CMA has suffered damages.

WHEREFORE, CMA seeks money damages resulting from MURSTEN's breach of fiduciary duties, together with interest and costs.

## COUNT V
## CLAIM FOR INJUNCTIVE RELIEF BY NBC FOR BREACH OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT BY MURSTEN

NBC realleges and reavers paragraphs 1-62, and would further allege:

88.     On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information, knowledge or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates.

89.     MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by improperly retaining confidential information and by disclosing to third parties confidential information and documents belonging to NBC.

90.     NBC has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

91.     MURSTEN continues breaching the 2011 Confidentiality and Non-Disclosure Agreement by continuing to disclose to third parties confidential information and documents belonging to NBC and by continuing to improperly retain confidential information.

92.     If MURSTEN is not enjoined from continuing to breach the 2011 Confidentiality and Non-Disclosure Agreement, NBC will suffer irreparable harm.

93.     NBC has no other adequate remedy at law, and this action for injunctive relief is NBC's only means for securing relief.

94.     The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce it.

WHEREFORE, NBC seeks injunctive relief including, but not limited to, restraining further violation of the 2011 Confidentiality and Non-Disclosure Agreement and the return of the confidential information, together with attorney's fees and costs.

**COUNT VI**
**CLAIM FOR INJUNCTIVE RELIEF BY CMA FOR BREACH**
**OF THE 2011 CONFIDENTIALITY AND NON-DISCLOSURE**
**AGREEMENT BY MURSTEN**

CMA realleges and reavers paragraphs 1-62 and would further allege:

95.    On January 24, 2011, MURSTEN executed the 2011 Confidentiality and Non-Disclosure Agreement whereby he agreed not to disclose or make use of any confidential information or documents received during the course of his employment or consulting with NBC or its subsidiaries and affiliates, including CMA.

96.    CMA is a beneficiary of the 2011 Confidentiality and Non-Disclosure Agreement and was included with the entities covered by the 2011 Confidentiality and Non-Disclosure Agreement.

97.    MURSTEN breached the 2011 Confidentiality and Non-Disclosure Agreement by improperly retaining confidential information and by disclosing to third parties confidential information and documents belonging to CMA.

98.    CMA has been injured and damaged as a result of MURSTEN's breach of the 2011 Confidentiality and Non-Disclosure Agreement.

99.    MURSTEN continues to this day breaching the 2011 Confidentiality and Non-Disclosure Agreement by continuing to improperly retain confidential information and by continuing to disclose to third parties confidential information, knowledge and documents which are the property of CMA.

100.    If MURSTEN is not enjoined from continuing to breach the 2006 Confidentiality and Non-Disclosure Agreement, CMA will suffer irreparable harm.

101.    CMA has no other adequate remedy at law, and this action for injunctive relief is CMA's only means for securing relief.

102.    The 2011 Confidentiality and Non-Disclosure Agreement included a provision for the payment of attorney's fees incurred to enforce it.

WHEREFORE, CMA seeks injunctive relief including, but not limited to, restraining further violation of the 2011 Confidentiality and Non-Disclosure Agreement and the return of the confidential information, together with attorney's fees and costs.

## COUNT VII
## CLAIM FOR PUNITIVE DAMAGES BY NBC

NBC realleges and reavers paragraphs 1-62 and further alleges:

103.    MURSTEN, a lawyer and member of the Florida bar, has, as described herein, acted willfully, wantonly, and maliciously, in order to obtain pecuniary benefit for himself and/or to financial harm NBC.

104.    MURSTEN's actions go far beyond simple breaches of his obligations to NBC. MURSTEN, a lawyer and member of the Florida bar, as described herein, has acted recklessly, with utter disregard for his obligations to NBC, with a design and intent to oppress NBC, and acted outrageously, with moral turpitude, insult and fraud on NBC.

105.    In light of the nature and reprehensibility of MURSTEN's actions, punitive damages can and should be awarded in an amount to be determined.

WHEREFORE, NBC seeks punitive damages against MURSTEN together with interest and costs.

## COUNT VIII
## CLAIM FOR PUNITIVE DAMAGES BY CMA

CMA realleges and reavers paragraphs 1-62 and further alleges:

106.    MURSTEN, a lawyer and member of the Florida bar, has, as described herein, acted willfully, wantonly, and maliciously, in order to obtain pecuniary benefit for himself and/or to financial harm NBC.

107.    MURSTEN's actions go far beyond simple breaches of his obligations to CMA. MURSTEN, as described herein, has acted recklessly, with utter disregard for his obligations to

CMA, with a design and intent to oppress CMA, and acted outrageously, with moral turpitude, insult and fraud on CMA.

108.     In light of the nature and reprehensibility of MURSTEN's actions, punitive damages can and should be awarded in an amount to be determined.

109.     WHEREFORE, CMA seeks punitive damages against MURSTEN together with interest and costs.

> WALDMAN TRIGOBOFF HILDEBRANDT
>       MARX & CALNAN, P.A.
> Counsel for Plaintiffs
> Broward Financial Center • Suite 1700
> 500 East Broward Boulevard
> Fort Lauderdale, Florida  33394
> Telephone:     (954) 467-8600
> Facsimile:     (954) 467-6222
>
> By:_____/s Glenn J. Waldman_____
>       Glenn J. Waldman
>       Florida Bar No. 374113
>       Gwaldman@waldmanlawfirm.com